IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

MARK JASON GOADE and )
MARCELLA JANINE GOADE, )
)
Plaintiffs, )
)
vs. ) Case No. 13-5123-CV-SW-ODS
)
MEDTRONIC, INC., et al., )
)
Defendants. )

## ORDER AND OPINION GRANTING MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION AND DENYING REQUEST FOR AN AWARD OF FEES AND COSTS

Plaintiffs, citizens of Missouri, filed this suit in state court in May 2013, filed their Amended Petition in July 2013, and served the Medtronic Defendants in August 2013. The Medtronic Defendants removed the case to federal court on September 3, 2013. The Notice of Removal acknowledges a third defendant, Dr. Brian Ipsen, is a citizen of Missouri, that his presence as a defendant destroys diversity of citizenship, and all of Plaintiffs' causes of action are created by state law. Defendants nonetheless contend federal jurisdiction exists because (1) Dr. Ipsen was fraudulently joined and, alternatively, (2) the case arises under federal law within the meaning of 28 U.S.C. § 1331.

The Court directed Plaintiffs to address these jurisdictional arguments, and Plaintiffs did so by filing a Motion to Remand. The motion is now fully briefed. After reviewing the parties' arguments (including those set forth in the Notice of Removal), the Court concludes that it lacks subject matter jurisdiction in this case, so the motion (Doc. # 16) is granted. The Court expresses no view on whether Dr. Ipsen's joinder in the removal was untimely.

## I. BACKGROUND

Plaintiff Mark Goade underwent spinal fusion surgery in the cervical region of his spine. The surgery was performed by Defendant Dr. Mark Ipsen. During the surgery Dr. Ipsen used a bio-engineered liquid bone graft product known as Infuse. Infuse helps vertebra fuse and obviates the need for the doctor to implant another bone harvested from the patient or a cadaver. The product was developed, designed, marketed, etc. by the Medtronic Defendants. Plaintiffs allege the specific manner in which Infuse was used during his surgery was not approved for use by the FDA, so it constituted an unlawful off-label use.

Counts I through VII and Count XII assert state law claims against the Medtronic Defendants:

| | |
|---|---|
| Count I | Fraud |
| Count II | Strict Liability – Failure to Warn |
| Count III | Strict Liability – Design Defect |
| Count IV | Strict Liability – Misrepresentation |
| Count V | Negligence |
| Count VI | Breach of Express Warranty |
| Count VII | Breach of Implied Warranty |
| Count XII | Violation of the Missouri Merchandising Practices Act |

In general, these counts allege the Medtronic Defendants promoted the use of Infuse in manners not approved by the FDA, failed to report adverse results from these allegedly off-label uses, and committed other violations of the Food, Drug and Cosmetic Act ("FDCA").

Counts VIII through X assert state law claims against Dr. Ipsen:

| | |
|---|---|
| Count VIII | Medical Malpractice |
| Count IX | Failure to Obtain Informed Consent |
| Count X | Fraud |

Count VIII includes theories that do not relate to Infuse at all, including a clam that Dr. Ipsen committed malpractice by performing this particular medical procedure "when less risky procedures . . . were more available and more appropriately indicated for" Plaintiff

Mark Goade. Petition, ¶ 381(a). Count VIII also alleges Dr. Ipsen failed to warn of the dangers and risks associated with Infuse. Petition, ¶ 381(b). All three of these claims allege Dr. Ipsen failed to advise Plaintiff of the fact that Infuse would be used in a manner not approved by the FDA and failed to advise Plaintiff of the risks of such use. Petition, ¶¶ 381(c), 395-96, 407-08.

Finally, Count XI is a state law claim for loss of consortium, asserted by Janine Goad against all three Defendants.

## I. DISCUSSION

### A. Fraudulent Joinder

The Eighth Circuit has articulated the fraudulent joinder standard as follows:

> Where applicable state precedent precludes the existence of a cause of action against a defendant, joinder is fraudulent. "[I]t is well established that if it is *clear* under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained." Iowa Pub. Serv. Co. v. Med. Bow Coal Co., 556 F.2d 400, 406 (8th Cir. 1977) (emphasis added). However, if there is a "colorable" cause of action - that is, if the state law *might* impose liability on the resident defendant under the facts alleged - then there is no fraudulent joinder. See Foslip Pharm., Inc. v. Metabolife Int'l, Inc., 92 F. Supp.2d 891, 903 (N.D. Iowa 2000).

Filla v. Norfolk S. Ry. Co., 336 F.3d 806, 810 (8th Cir. 2003) (internal footnote omitted). "[J]oinder is fraudulent when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." Wiles v. Capitol Indem. Corp., 280 F.3d 868, 871 (8th Cir. 2002). If there is a reasonable basis in fact and law that supports the claim, joinder is not fraudulent. Filla, 336 F.3d at 810.

In conducting this inquiry, the Court must "resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor," but the Court has "no responsibility to *definitively* settle the ambiguous question of state law." Id. at 811 (citations omitted) (emphasis in original). "Instead, the court must simply determine whether there is a reasonable basis for predicting that the state's law *might* impose

3

liability against the defendant." Id. (emphasis added). Where the sufficiency of the complaint against the non-diverse defendant is questionable, "the better practice is for the federal court not to decide the doubtful question in connection with a motion to remand but simply to remand the case and leave the question for the state courts to decide." Id. (quoting Iowa Pub. Serv. Co., 556 F.2d at 406). Finally, the party seeking removal and opposing remand has the burden of demonstrating that federal jurisdiction exists. In re Bus. Men's Assurance Co. of Am., 992 F.2d 181, 183 (8th Cir. 1995) (per curiam) (citing Bor-Son Bldg. Corp. v. Heller, 572 F.2d 174, 181 n.13 (8th Cir. 1978)).

Defendants' arguments conflate the fraudulent joinder standard with the Rule 12(b)(6) standard – which is not permitted. The Defendants must "do more than merely prove that the plaintiff's claim should be dismissed pursuant to a Rule 12(b)(6) motion" and cannot merely "focus on the artfulness of the plaintiff's pleadings." Block v. Toyota Motor Corp., 665 F.3d 944, 948 (8th Cir. 2011) (citing Knudson v. Systems Painters, Inc., 634 F.3d 968, 980 (8th Cir. 2011)).[1] Thus, for instance, Defendants' arguments that the claims against Dr. Ipsen fail to satisfy the federal pleading standards of Ashcroft v. Iqubal, 556 U.S. 662 (2009) and Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) need not be analyzed: even if Defendants are correct and the federal pleading standards have not been satisfied, this failing will not demonstrate fraudulent joinder.[2]

---

[1]Defendants believe Block is favorable to them, but as the passage referenced in the text indicates that case does not justify applying a Rule 12(b)(6) standard when evaluating whether a defendant has been fraudulently joined. In Block the diversity-destroying defendant was fraudulently joined because the initial pleading lacked the reasonable basis in fact and law required by Filla. 665 F.3d 944, 950-51 (8th Cir. 2011). This is not because the pleading filed in state court failed to comport with Iqbal and Twombley (neither of which were cited in Block) but because the pleading failed to allege the seller had the requisite knowledge at the requisite time to expose it to liability under Minnesota's "innocent seller" statute. There was thus no reasonable basis for concluding the diversity-destroying defendant might be liable. In contrast, Plaintiffs' Petition does not suffer from this failing and presents a reasonable basis for believing Dr. Ipsen might be liable. Even if the pleading's sufficiency is in question, Filla commands that the "better practice" is to remand.

[2]The Court has great difficulty faulting Plaintiffs for failing to satisfy the *federal* pleading standards in a petition filed in *state* court. They did not select this forum, and justice would require affording them an opportunity to amend their pleadings to conform to the federal standards. This conclusion is not altered by Defendants' insinuation that the state standard is more demanding, as (1) the fact that one standard may be

Defendants also suggest Dr. Ipsen was fraudulently joined because some of Plaintiffs' claims against him contradict claims against the Medtronic Defendants. Specifically, some (but not all) of Plaintiffs' claims depend on whether Dr. Ipsen knew this use of Infuse was off-label. This fact is in dispute: either (1) the Medtronic Defendants told Dr. Ipsen or (2) Medtronic Defendants did not tell Dr. Ipsen. Presenting alternative claims that depend on the resolution of this unknown fact does not render any of the claims fraudulent. The question is not whether Plaintiffs will prevail against Dr. Ipsen; the question is whether they might. Plaintiffs have presented facts and law that suggest Dr. Ipsen might be liable. Fraudulent joinder does not apply even though those claims depend on the resolution of certain factual issues and, in some cases, legal issues. Indeed, the very fact that these issues exist counsels *against* a finding of fraudulent joinder. Knudson, 634 F.3d at 980; Filla, 336 F.3d at 810; Wiles, 280 F.3d at 871. It is impossible to conclude Dr. Ipsen was fraudulently joined because the facts and Missouri law might allow Plaintiffs to prevail.

Finally, even if pleading contradictory claims does constitute fraudulent joinder, Defendants' argument still fails. At least two of Plaintiffs' claims do not depend on the outcome of this unknown fact and can co-exist with Plaintiffs' claims against the Medtronic Defendants. The Court is referring specifically to Plaintiffs' claims that Dr. Ipsen committed malpractice by (1) not advising of the risks of Infuse and (2) recommending and performing a surgical procedure that was riskier than available alternatives. These claims have not been fraudulently joined in this action.

---

generally described as more demanding does not mean the failure to meet one is automatically a failure to meet the other, (2) like a federal court, the state court might permit Plaintiffs to remedy any inadequate pleadings, and (most importantly) (3) the argument still presupposes that an inartful pleading gives rise to fraudulent joinder, and the cases cited in the text demonstrate otherwise. As a concluding thought, the Court notes the Petition does not merely assert legal causes of action and that it alleges supporting facts. Indeed, Defendants' ability to complain about the allegedly contradictory facts alleged would prove the point even if reading the Petition did not.

5

## B. Federal Question

Defendants alternatively argue jurisdiction exists under 28 U.S.C. § 1331 because the case arises under federal law. It is well-understood that a suit arises under the law that creates the cause of action; it is also understood that this is a rule of inclusion and not exclusion. Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 808-09 (1986). Thus, while Plaintiffs' claims are created by state law (and are not automatically included within the definition of "arising under") this does not end the inquiry.

Defendants' argument rests on the involvement of the Medical Device Amendments of 1976 ("MDA"), which prescribe the FDA's approval process for medical devices such as Infuse. The MDA is an issue in this case by virtue of (1) some of Plaintiffs' claims, which allege Infuse was sold in a manner not approved by the FDA and (2) defenses asserted by Defendants.

In a series of cases the Supreme Court has warned must be read cautiously, a narrow category of state-law claims may arise under federal law. See Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 699 (2006) (describing this as a "special and small category."). This occurs when state claims "nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005). However, the fact that a federal issue is a contested ingredient in a state-based claim is insufficient; the issue must be "a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum" and federal jurisdiction "must be consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." Id. at 313-14. In a passage critical to the inquiry, the Grable Court warned that "the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction." Id. The Grable Court warned, however, that the phrase "federal issue" is not "a password opening federal courts to any state action embracing a point of

federal law.  Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id.

The Supreme Court provided further explanation in Gunn v. Minton, 133 S. Ct. 1059 (2013) – a case decided earlier this year yet conspicuously unmentioned by either side.  Writing for a unanimous Court, Chief Justice Roberts distilled this branch of arising-under jurisdiction to those where: "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." 133 S. Ct. at 1065.  Thus, not all state claims that necessarily raise federal issues qualify under section 1331.

This Court begins by focusing on the Petition to determine what issues will be necessarily raised and actually disputed.  Defendants rely quite heavily on their federal defenses to augment the federal nature of the case, but the Court rejects this effort as it has long been held that defenses predicated on federal law will not give rise to federal jurisdiction.  See Mesa v. California, 489 U.S. 121, 136-37 (1989) (citing Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149 (1908)); Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 809 (1988) (citing Mottley); Pet Quarters, Inc. v. Depository Trust & Clearing Corp., 559 F.3d 772, 779 (8th Cir. 2009).  The only exception to this rule is when Congress has preempted the entire field; examples of this include the Labor Management Relations Act ("LMRA") and the Employee Retirement Income Security Act ("ERISA").  Defendants do not argue that the MDA completely preempts the field of tort litigation: they only argue they have a defense to these particular claims.[3]  Even if Defendants are correct and Congress has provided a preemption defense, this defense cannot support federal jurisdiction.  "The rule that a federal defense does not create federal jurisdiction includes the defense of preemption.  Such a defense is not sufficient to establish federal jurisdiction even in circumstances where it appears likely that the case would eventually be dismissed on the basis of

---

[3]This is just as well, as it is clear the MDA provides a defense and is not an expression of Congress' intent to preempt the field.  Cf. In re Medtronic, Inc. Sprint Fidelis Leads Products Liability Litig., 623 F.3d 1200, 1204 (8th Cir. 2010).

7

preemption." Johnson v. MFA Petroleum Co., 701 F.3d 243, 248 (8th Cir. 2012); see also Caterpillar Inc. v. Williams, 482 U.S. 386, 398-99 (1987).

Plaintiff's claims against the Medtronic Defendants necessarily raise federal issues that are actually disputed because their state claims are viable only if they parallel the FDCA. The Petition thus must allege conduct that violates the FDCA. See In re Medtronic, Inc. Sprint Fidelis Leads Products Liability Litig., 623 F.3d 1200, 1204 (8th Cir. 2010). The Court is inclined to stop the inquiry at this juncture, because the Supreme Court has explicitly held that a state tort claim incorporating allegations that the FDCA has been violated does not arise under federal law for purposes of section 1331. Merrell Dow, 478 U.S. at 813-17. Defendants insinuate Merrell Dow was undercut by Grable, but Grable's discussion of Merrell Dow provides no support for this contention, nor does Grable suggest that Merrell Dow's specific holding with respect to state claims incorporating elements of the FDCA is suspect. See Grable, 545 U.S. at 316-19. Merrell Dow not only remains good law generally, but it is specifically sufficient to establish that these state claims do not arise under federal law.

Defendants proceed further, and suggest that even if Merrell Dow is still valid, it does not apply in this context. They see a difference between Merrell Dow and this case because the former involved a drug and this case involves a medical device. However, there is no authority suggesting that Merrell Dow depends on this distinction – or, for that matter, that the jurisdictional analysis depends on this distinction. The distinction is, in short, meaningless.

A full analysis of the issue confirms the case does not arise under federal law because those issues are not substantial. Gunn cautioned that determining whether a contested federal issue is "substantial" is not an inquiry to be made with respect to the case at hand – for if this were the case, then the requirement would have no meaning because every federal issue that is necessarily raised and actually disputed would be "substantial." Id. at 1066. Instead, the Court noted that substantiality is measured by some importance external to the suit at hand: in Grable, it was the validity of IRS regulations related to the sale of taxpayers' assets and in Smith v. Kansas City Title & Trust Co., 255 U.S. 180 (1921), substantiality existed because the case turned on the constitutionality of bonds issued by a federal agency. Gunn, 133 S. Ct. at 1066; see

8

also Empire Healthchoice, 547 U.S. at 69 (noting Grable raised a substantial issue because it "centered on the action of a federal agency (IRS) and its compatibility with a federal statute . . . .").[4] The present suit does not raise a federal issue that is as substantial as these; "[i]n sum, Grable emphasized that it takes more than a federal element to open the arising under door." Empire Healthchoice, 547 U.S. at 700 (quotations omitted).

Defendants' remaining arguments for substantiality are insufficient. Federal courts' greater expertise with federal issues is not enough. Gunn, 133 S. Ct. at 1068; Merrell Dow, 478 U.S. at 815-16. The desire for uniform interpretation of federal law is related to the argument about expertise (as it presupposes state courts will not properly interpret federal law) and for the same reasons has been found insufficient. "[T]he possibility that a state court will incorrectly resolve a state claim is not, by itself, enough to trigger the federal courts' [jurisdiction]." Gunn, 133 S. Ct. at 1068. Defendants argue that leaving the suit in state court damages Congress' regulatory scheme, but (1) this argument also presupposes the state court will incorrectly apply federal law and (2) as the Merrell Dow Court stated, this argument is really a justification for Congress to pre-empt state court jurisdiction (as has been done with the National Labor Relations Act, the LMRA, and ERISA, among others) – which Congress has plainly not done. 478 U.S. at 816. Defendants describe the federal interest in regulating medical devices as substantial – but then, such a claim could be made anytime Congress legislates. More importantly, such an argument was unavailing in Merrell Dow.

Ultimately, the question is whether the federal issue is "such an important issue of federal law that [it] belongs in a federal court." Grable, 545 U.S. at 315. There is a need to demonstrate the issue "is significant to the federal system as a whole," Gunn, 133 S. Ct. at 1068 – that is, an importance that transcends the parties. As noted, this degree of importance has been found only when the Government's operations are

---

[4]Pet Quarters does not require a different outcome. It appears the federal issue was substantial because the private suit implicated the SEC's approval of certain stock-trading programs; the suit alleged the approval was invalid because the programs approved by the SEC were anticompetitive. 559 F.3d at 779. To the extent Pet Quarters employs broader language that would seem to aid the Medtronic Defendants' cause, the Court notes this case was decided before the Supreme Court's decision in Gunn, and the undersigned is obligated to apply decisions from the Supreme Court.

9

affected by the federal issue.  Only in such cases could it be confidently stated that if Congress had thought about the issue it would have sensibly concluded the dispute should be resolved by a federal court.  In contrast, Congress has not created a federal right of action, preempted the entirety of state regulation, or divested state courts of jurisdiction in such matters.  This failure is telling and cements the Court's conclusion that the federal issues raised in the Petition are not substantial within the meaning of Gunn.

The analysis to this point makes the outcome clear.  Nonetheless, the Court considers the final factor: the balance between federal and state judicial responsibilities.  Again, the fact that Congress could have – but did not – take steps to permit federal jurisdiction or preclude state jurisdiction is telling.  See Grable, 545 U.S. at 318 (interpreting Merrell Dow).  Defendants contend there are very few Class III medical devices like Infuse, so only a small number of cases previously destined for state court would arise under federal law.  However, Defendants' legal analysis would not be confined to Class III medical devices.  It would apply, minimally, to all medical devices, and arguably would apply further.  In fact, the logic of Defendants' argument would apply to Merrell Dow and Gunn because there is no way to distinguish those cases from this one.

### C.  Fees and Costs

The only remaining issue is whether to order the Medtronic Defendants to pay Plaintiff's costs and fees as permitted by 28 U.S.C. § 1447(c).  While such an award is within a court's discretion, that discretion is not without guidance.  "[T]he standard for awarding fees should turn on the reasonableness of the removal.  Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."  Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).  While the Court believes its lack of jurisdiction is clear, the Court does not believe an award of fees and costs is appropriate.

First, there are some pre-Gunn cases from lower courts that interpret Grable quite broadly and lend some support to the Defendants' theory. The Court is not bound by those decisions and disagrees with them to the extent they are inconsistent with the reasoning advanced above. Those broad interpretations are also of doubtful validity in light of Gunn. The Court is concerned that Defendants have ignored Gunn – but then, so too have Plaintiffs. Plaintiffs' accusing finger points to "ten cases" like this one that the Medtronic Defendants have removed, creating the impression that ten different courts have rejected their theory. In truth, however, nine of those cases were consolidated before a single District Judge – so only two courts have previously considered and rejected the Medtronic Defendants' theory. This apparent lack of candor is disturbing. The Medtronic Defendants are now on fair notice that if they rely on these arguments in a future case, a district judge might be justified in concluding they lack an objectively reasonable basis for removal. This is (as far as the Court can tell) their third failure and the omission of the Supreme Court's latest pronouncement on the issue has been brought to their attention.

Second, Court harbors even more concerns about the fraudulent joinder arguments. Defendants have cobbled together generalized arguments and applied them to the Petition without much analysis or discussion of the Petition's actual allegations. The inquiry is inherently case-specific and depends considerably on the contents of the state pleading. Ironically, Defendants accusation that Plaintiffs have offered nothing but legal labels is itself a legal label: the Court's review of the Petition demonstrates there are sufficient factual allegations to suggest Dr. Ipsen might be liable under state law. Despite the Court's misgivings that Defendants have somewhat cavalierly argued that Dr. Ipsen was fraudulently joined, the Court denies the request for costs and fees because the Court believes Defendants' primary position is the one premised on federal question jurisdiction and as discussed above the Court believes there is just enough of a basis for Defendants' arguments to counsel against shifting the costs.

## III. CONCLUSION

The Court concludes it lacks subject matter jurisdiction in this case. The Motion to Remand is granted. The other pending motions remain pending for resolution by the State Court.

IT IS SO ORDERED.

                                              /s/ Ortrie D. Smith
                                              ORTRIE D. SMITH, SENIOR JUDGE
DATE: December 3, 2013                UNITED STATES DISTRICT COURT